SAAD, APPELLANT, *v.* RODRIGUEZ ET AL.; WEINBERGER ET AL., APPELLEES.

(No. 50471—Decided May 27, 1986.)

*Caldwell & Thornton* and *W. Wilson Caldwell,* for appellant.

*George W. Stuhldreher* and *James M. Speros,* for appellees Tricarichi, Carnes, Kube & Weinberger and Peter H. Weinberger.

KRUPANSKY, J. This appeal involves the single issue of whether the one-year statute of limitations set forth in R.C. 2305.11 applies to escrow work performed by an attorney. The trial court answered this question in the affirmative and granted summary judgment to appellees Weinberger and the law firm of Tricarichi, Carnes, Kube & Weinberger. Upon review of the factual setting of the case, the relevant documents and applicable law, the decision of the trial court is affirmed as modified and reversed and remanded in part for further proceedings in accordance with this opinion.

On March 23, 1981, plaintiff-appellant Mathile Saad ("Saad") sent defendant Angel Rodriguez ("Rodriguez")[1] a letter of intent in which Saad offered to buy Rodriguez's property located at 2626 Scranton Road ("Scranton property"). Saad tendered Rodriguez $1,000 to serve as earnest money until "the formal purchase agreement and related documents are drafted." Rodriguez accepted the terms of the letter.

Soon thereafter Saad sought professional assistance in completing the prerequisites to a successful purchase of real property. To this end she engaged defendant-appellee Peter Weinberger, Esq. ("Weinberger") of the law firm of defendant-appellee Tricarichi, Carnes, Kube & Weinberger ("T, C, K & W"). Weinberger drafted a formal purchase agreement.

In addition to setting forth the terms and conditions of the sale, the agreement states as follows:

---

[1] Angel Rodriguez and his wife Carmen were named as defendants; however, they are not parties to this appeal.

"Escrow agent shall be Tricarichi, Carnes, Kube & Weinberger.

"* * *

"This Agreement shall serve as mutual escrow instructions to Tricarichi, Carnes, Kube & Weinberger * * *."

The agreement did include instruc-. tions which delineated the obligation of the escrow agent. One of the responsibilities of the escrow agent, *viz.*, to receive documents and funds, was set forth in paragraph seven of the agreement:

"All of the documents and funds necessary for the completion of this transaction shall be placed in escrow with Tricarichi, Carnes, Kube & Weinberger * * *."

Paragraph four clearly set forth one of the documents "necessary for the completion of [the] transaction":

"Sellers shall furnish at their cost and expense a Title Insurance in the full amount of the Purchase Price, to wit: Twenty-Two Thousand Two Hundred Fifty-Two Dollars and Seventeen Cents ($22,252.17)."

Title insurance was never purchased and consequently never placed in escrow. Despite the lack of any express written instructions to do so, Weinberger ordered a title examination and a title commitment[2] was delivered to Saad; however, a judgment lien resulting from a judgment against Rodriguez was filed against the Scranton property *after* the title search was performed but *before* Saad's deed was recorded.[3] The absence of the title insurance and the presence of the judgment lien resulted in a defective title and potential liability for Saad.

On November 9, 1983, Saad brought an action in common pleas court naming Rodriguez, Weinberger and T, C, K & W as defendants. Saad alleged one or all of the defendants was negligent in allowing title to pass without obtaining title insurance on the Scranton property. The cause of action against Rodriguez was based on paragraph four of the purchase agreement which required the sellers to furnish title insurance. The complaint further alleged Weinberger and the T, C, K & W firm, as escrow agent, failed to comply with the escrow instructions set forth in the purchase agreement prior to releasing escrow. Specifically, Saad alleged the firm failed to obtain title insurance prior to disbursing the funds placed in escrow by Saad.

All defendants filed timely answers and discovery proceeded. On November 19, 1984, Weinberger and T, C, K & W filed a motion for summary judgment alleging any work done by the firm or its agents was legal work. Thus, the cause of action was governed by the one-year statute of limitations for malpractice. Weinberger and T, C, K & W further contended the instant action was brought fifteen months after appellant "should have discovered" any injury complained of. Thus, the action as to the firm and Weinberger was barred by the applicable statute of limitations. R.C. 2305.11; and see *Skidmore & Hall* v. *Rottman* (1983), 5 Ohio St. 3d 210, 5 OBR 453, 450 N.E. 2d 684. Saad did not respond to the motion for summary judgment.

On February 28, 1985, the court granted summary judgment in favor of Weinberger and T, C, K & W. Since the judgment entry did not dispose of all parties, *viz.*, the seller Rodriguez, nor did the journal entry contain the statement "no just reason for delay" pursuant to Civ. R. 54(B), the appellant

---

[2] A title commitment is the written report of the findings of the title search.

[3] Weinberger and the law firm contend Saad knew of the judgment against Rodriguez and that Saad disregarded their advice directing her to allow the deed to be filed through "routine processes." Saad filed the deed herself.

filed a motion for clarification on April 5, 1985. On May 24, 1985, the trial court entered the following order:

"The entry of this court granted the motion for summary judgment of defendants, Tricarichi, Carnes, Kube & Weinberger and P. H. Weinberger individually which entry, filed in Civil Journal Vol. 774 at page 3, is amended to add the following language: *Such ruling is made upon the determination that lawyers' professional misconduct whether founded in tort or contract constitutes legal malpractice* and upon the determination that there is no just reason for delay." (Emphasis added.)

Saad appealed.

Appellant's assignment of error states as follows:

"The trial court erred in granting the appellee firm summary judgment."

The trial court granted summary judgment on the theory all work performed by T, C, K & W was legal work and any misconduct would be legal malpractice and, thus, the applicable statute of limitations had run. A review of the relevant documents and applicable law demonstrates partial error in the court's analysis. Consequently, appellant's assignment of error is partially meritorious.

In *Squire* v. *Branciforti* (1936), 131 Ohio St. 344, 6 O.O. 59, 2 N.E. 2d 878, the Ohio Supreme Court recognized the existence of a dual capacity in the relationship a bank had to a purchaser of real estate. Paragraph two of the syllabus states as follows:

"Where a bank is chosen as such depositary or escrow agent, and for an agreed fee, acting through its trust department, accepts and retains such escrow agreement between grantor and grantee, by force of the terms of which the grantor delivers to it his deed for the lands in question, *with directions to deliver the deed to the grantee upon the conditions set out in the escrow agreement, and the grantee delivers the consideration upon conditions likewise set out in the escrow agreement, such bank occupies a dual capacity as agent in so far as the manual duties are concerned, and as a paid trustee in so far as the purchase money is concerned.*" (Emphasis added.)

Similarly, in the case *sub judice*, Weinberger and T, C, K & W occupied a dual capacity in their relationship with Saad. Part of their work entailed legal services but a separate and distinct aspect of their services was governed by the escrow instructions and thus constituted escrow services.

In delineating the responsibilities of an escrow agent, the Ohio Supreme Court has defined escrow as follows:

"An escrow fills a definite niche in the body of the law. It has a distinct legal character. Escrow is defined as follows:

" 'A written instrument which by its terms imports a legal obligation, and which is deposited by the grantor, promissor, obligor, or his agent, with a stranger or third party, to be kept by the depositary *until the performance of a condition or* the happening of a certain event, *and then to be delivered* over to the grantee, promisee or obligee. [Citation omitted.]' " (Emphasis added.) *Squire* v. *Branciforti, supra,* at 353, 6 O.O. at 63, 2 N.E. 2d at 882.

The court also explained an escrow agreement contains certain conditions imposed by both parties which the escrow agent agrees to obey. The main function of an escrow agent is to hold documents and funds until the conditions of the purchase agreement are met whereupon the escrow agent releases the documents and funds. See *Squire* v. *Branciforti, supra; Pippin* v. *Kern-Ward Bldg. Co.* (1982), 8 Ohio App. 3d 196, 8 OBR 266, 456 N.E. 2d 1235; *Gove* v. *Jablonski* (Feb. 7, 1985), Cuyahoga App. No. 48411, unreported. Thus, the *escrow is a fiduciary agent for both parties* to a purchase agreement.

By contrast, *an attorney represents one party* to a purchase agreement. An

attorney owes a fiduciary relationship only to the party so represented. Thus, the inherent natures of the two positions, *viz.,* attorney and escrow agent, are distinct and mutually exclusive.

It remains for the trier of fact to determine which actions were legal services performed for Saad alone and which actions were purely escrow work performed for the benefit of both parties. Therefore, the court erred when it determined that any alleged misconduct on the part of Weinberger and the firm would constitute legal malpractice. Thus, summary judgment was improperly rendered.[4]

One responsibility assigned to Weinberger and the firm in their status as escrow agent was to "carry out the terms of the [escrow] agreement as intended by the parties." *Pippin* v. *Kern-Ward Bldg. Co., supra,* at paragraph one of the syllabus. One of the terms required the escrow agent to retain the purchased title insurance for the Scranton property prior to the release of the $10,000 deposited in escrow by Saad. The purchase agreement may also be read so as to impose upon the seller, *viz.,* Rodriguez, the responsibility of obtaining the title insurance. Thus, the trier of fact must determine who, if anyone, breached his obligation to Saad, *e.g.,* did Rodriguez breach the purchase agreement by failing to purchase the title insurance or did Weinberger and the firm breach the escrow agreement by releasing the funds before the title insurance was purchased. The next issue of material fact to be determined is proximate cause, *i.e.,* who or what was the proximate cause of Saad's predicament. Within this framework Saad's own actions may not escape the scrutiny of the trier of fact.

If the trier of fact determines Saad's damage, if any, was proximately caused by a breach of Weinberger and T, C, K & W acting in their capacity as attorneys, then the cause of action against them would be barred by R.C. 2305.11, the statute of limitations governing malpractice. However, if the trier of fact determines Saad's damage, if any, was proximately caused by a breach of Weinberger and T, C, K & W acting in their capacity as escrow agent, pursuant to the escrow agreement, then the misconduct is governed by R.C. 2305.06, the fifteen-year statute of limitations governing contracts in writing.

Therefore, insofar as the trial court determined as a matter of law that any alleged legal malpractice by Weinberger and T, C, K & W was barred by the statute of limitations, the judgment of the trial court is affirmed; however, that portion of the trial court's judgment which declared any alleged misconduct by Weinberger and T, C, K & W to be legal malpractice is reversed.

The case is remanded for an initial determination of whether the alleged misconduct by Weinberger and T, C, K & W was performed in their capacity as attorney or escrow agent. If done as attorney, the action is barred; if done as escrow agent, the action must continue for a determination as to proximate cause and damages.

The case is affirmed as modified and in part reversed and remanded for further proceedings in accordance with this opinion.

*Judgment accordingly.*

ANN MCMANAMON, P.J., and CORRIGAN, J., concur.

---

[4] Civil R. 56(C) states in part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, *show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."* (Emphasis added.)