This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Roy Culbertson ("Culbertson"), appeals the decision of the Summit County Court of Common Pleas granting judgment in favor of Appellee, Wigley Title Agency, Inc. ("Wigley Title"). We affirm.
 I.
In June 1993, Culbertson loaned $100,000 to Frank Walker Homes, Inc. ("Walker Homes"), a developer. Culbertson had loaned money to Walker Homes and its president, Frank Walker ("Walker") on two prior occasions. On June 25, 1993, Walker executed a promissory note for the loan on behalf of the corporation and granted Culbertson a mortgage on several parcels of property, located on Front Street in Cuyahoga Falls, Ohio, as security. Walker Homes was acquiring the property in two separate transactions, one transfer of property from Arthur, William, and Janet Ruggles to Walker Homes (the "Ruggles transfer"), and one transfer from Alexander and Anne Marie Swartz to Walker Homes (the "Swartz transfer"). Frank Epperson ("Epperson") also loaned money to Walker Homes and was given a mortgage on the same property. Wigley Title closed both property transfers and handled the filing of the mortgages. Wigley Title filed Epperson's mortgage before Culbertson's.
Walker Homes defaulted on both loans, and in August 1999, Epperson brought a foreclosure action. The property was sold at sheriff's auction in June 2000, but the proceeds did not cover both Epperson's and Culbertson's mortgage. As Epperson held a mortgage higher in priority than Culbertson's, his mortgage was paid first. Culbertson recovered only a portion of the amount due from Walker Homes.
Culbertson filed a complaint against Wigley Title on February 1, 2000, asserting that Wigley Title breached its agreement with Culbertson and intentionally, negligently, or fraudulently breached its fiduciary duties. Culbertson asserted that Timothy Wigley ("Wigley") of Wigley Title promised him a first mortgage on the property, but in reality, he held a lesser mortgage. The matter proceeded to bench trial on May 30 and 31, 2001. The trial court found that Culbertson did not issue any escrow instructions to Wigley Title and Wigley Title did not promise Culbertson a first mortgage on the property. The court also found that Wigley Title owed no fiduciary duties to Culbertson. It further concluded that Wigley Title did not intentionally or fraudulently breach any agreement with Culbertson.
This appeal followed. Culbertson raises eight assignments of error, some of which will be addressed together for ease of review.
 II. Assignment of Error No. 1 THE LOWER COURT ERRED IN FAILING TO FIND, AS A MATTER OF LAW, THAT DEFENDANT/APPELLEE HAD BREACHED ITS AGREEMENT WITH PLAINTIFF/APPELLANT.
 Assignment of Error No. 2 THE LOWER COURT ERRED IN FAILING TO FIND, BY THE MANIFEST WEIGHT OF THE EVIDENCE, THAT DEFENDANT/APPELLEE HAD BREACHED ITS AGREEMENT WITH PLAINTIFF/APPELLANT.
In Culbertson's first two assignments of error, he challenges the trial court's finding that Wigley Title did not breach an agreement with Culbertson. Culbertson essentially argues that this finding was against the manifest weight of the evidence. We disagree.
"When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also State v. Otten (1986),33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment, the court must determine that the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
The trial court concluded that Wigley Title did not breach any agreement with Culbertson, finding that Wigley Title did not promise Culbertson that he would have a first mortgage on the subject properties. Culbertson testified that the only time he ever met anyone from Wigley Title was after Walker asked him to meet there in order to sign documents for this loan transaction. The meeting lasted only ten minutes, and it was the first time Culbertson had been to the Wigley Title office, even though Wigley Title handled the filing of the previous loan transactions between Culbertson and Walker.
Although the meeting was eight years prior to the trial, Culbertson stated,
 I remember two things in particular when I went into the office with Tim Wigley. He told me that I would have a first mortgage on the property on Front Street and that essentially what I was doing would be loaning money much the same as a bank and that I could foreclose if there was any default on the loan.
Culbertson stated that Wigley volunteered this information, that he was not merely responding to a question posed by Culbertson. Culbertson stated that he never asked Wigley if he had a first mortgage. On cross-examination, Culbertson admitted he could not remember specific details of the Wigley Title office or of his conversation with Walker while waiting to meet with Wigley. Culbertson also admitted on cross-examination that he would have gone ahead with the loan transaction even if he did not meet with Timothy Wigley.
Wigley's testimony is in direct conflict with that of Culbertson. Wigley testified that he informed Culbertson that he would have a mortgage. Wigley stated that he never told Culbertson it would be a "first" mortgage.
Culbertson also argues that Wigley never denied the existence of an agreement and that the testimony is uncontroverted. Culbertson relies on an argument that involves a narrow reading of language. Culbertson states that Wigley promised him he "would have" a first mortgage, then points to testimony where Wigley denied only telling Culbertson that he "had" a first mortgage. Culbertson urges us to note a fine distinction between the verb "would have" and the past tense "had"; this we decline to do.
The trial court heard conflicting accounts of the conversation between Wigley and Culbertson that occurred eight years prior to the trial. However, we note that matters of credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We find no indication that the trial court lost its way and committed a manifest miscarriage of justice in its determination that Wigley Title did not breach any agreement with Culbertson.
Culbertson's first and second assignments of error are overruled.
 Assignment of Error No. 3 THE LOWER COURT ERRED IN FAILING TO FIND, AS A MATTER OF LAW, THAT DEFENDANT/APPELLEE HAD BREACHED ITS FIDUCIARY DUTIES TO PLAINTIFF/APPELLANT.
 Assignment of Error No. 4 THE LOWER COURT ERRED IN FAILING TO FIND, BY THE MANIFEST WEIGHT OF THE EVIDENCE THAT DEFENDANT/APPELLEE HAD BREACHED ITS FIDUCIARY DUTIES TO PLAINTIFF/APPELLANT.
In his third and fourth assignments of error, Culbertson challenges the trial court's finding that Wigley Title had not breached its fiduciary duties, asserting that this finding was against the manifest weight of the evidence. Culbertson argues that Wigley Title failed to inform him that his mortgage would be inferior to that of Epperson. He further argues that Wigley Title should have informed him of Epperson's mortgage. We disagree.
In our discussion of Culbertson's first and second assignment of error, we set out the standard of review when a party challenges a finding as being against the manifest weight of the evidence. Thus, we must determine if the trial court, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
In order to succeed on a claim of breach of a fiduciary duty, a plaintiff must prove the existence of a duty arising out of a fiduciary relationship, failure to observe that duty, and injury resulting proximately therefrom. Strock v. Pressnell (1988), 38 Ohio St.3d 207,216, citing Stamper v. Parr-Ruckman Home Town Motor Sales (1971),25 Ohio St.2d 1, 3. One does not owe fiduciary duties to another absent the showing of a fiduciary relationship, out of which the duties arise.In re Termination of Employment of Pratt (1974), 40 Ohio St.2d 107, 115. A fiduciary relationship is one in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." Id. A fiduciary relationship can be created either by a formal agreement or may arise de facto from an informal relationship if both parties understand that a special trust or confidence has been reposed.Cairns v. Ohio Sav. Bank (1996), 109 Ohio App.3d 644, 649, citing UmbaughPole Bldg. Co. v. Scott (1979), 58 Ohio St.2d 282, syllabus.
Culbertson argues that Wigley Title owed him fiduciary duties based upon Wigley Title's actions as an escrow agent. The Ohio Supreme Court has described an escrow by stating,
 [a]n escrow in Ohio, as between grantor and grantee of real estate, is witnessed by a written instrument known as an escrow agreement, delivered by mutual consent of both parties to a third party denominated the depositary or escrow agent, in which instrument certain conditions are imposed by both grantor and grantee, which conditions the depositary or escrow agent, by the acceptance and retention of the escrow agreement, agrees to observe and obey.
Squire v. Branciforti (1936), 131 Ohio St. 344, paragraph one of the syllabus. The main function of an escrow agent is to hold documents and funds until the conditions are met whereupon the escrow agent releases the documents and funds. Spaulding v. Coulson (1995), 104 Ohio App.3d 62,81. Moreover, the duty of the escrow agent is "to carry out the terms of the agreement as intended by the parties." Pippin v. Kern-Ward Bldg. Co. (1982), 8 Ohio App.3d 196, 198.
This case concerns two property transfers, the Ruggles transfer and the Swartz transfer. Wigley Title was designated as the escrow/closing agent for both transfers. The evidence shows that Culbertson was not a party to either of the property transfers, nor was he a party to either escrow agreement. Moreover, Culbertson did not issue any escrow instructions to Wigley Title. The evidence discloses no formal agreement between Culbertson and Wigley Title. Thus, Culbertson and Wigley Title did not maintain a fiduciary relationship by formal agreement.
A fiduciary relationship may also be created without a formal agreement. However, an informal relationship cannot be unilateral. SeeUmbaugh Pole Bldg. Co. v. Scott (1979), 58 Ohio St.2d 282, paragraph one of the syllabus. A fiduciary relationship may be created out of an informal relationship, but such a relationship results only when both parties understand that a special trust or confidence has been reposed.Id. at 286. The record reveals no evidence of an understanding of such a relationship between Culbertson and Wigley Title. Instead, the evidence reveals the opposite.
Timothy Wigley of Wigley Title testified that he filed Culbertson's and Epperson's mortgages as an accommodation to Walker. Timothy Wigley described an accommodation filing by stating, "[i]t's basically put the document of record and supply the original back to the person who gave it." Timothy Wigley further testified that the only person he represented in the filing of the mortgages was Walker. He filed Epperson's mortgage first pursuant to Walker's instructions. Wigley Title did not view its relationship with Culbertson as one involving a special trust and confidence. Therefore, a fiduciary relationship between Culbertson and Wigley Title did not arise informally.
We cannot say that the trial court lost its way and created a manifest miscarriage of justice in holding that Wigley Title did not breach any fiduciary duties to Culbertson. Culbertson and Wigley Title did not share a fiduciary relationship from a formal agreement, nor does the evidence show that the parties created a fiduciary relationship through an informal means. Therefore, Culbertson's third and fourth assignments of error are overruled.
 Assignment of Error No. 5 THE LOWER COURT ERRED IN FAILING TO FIND, AS A MATTER OF LAW, THAT THE PLAINTIFF/APPELLANT SUSTAINED COMPENSATORY DAMAGES OF $86,673.86, PLUS INTEREST AND COSTS.
 Assignment of Error No. 6 THE LOWER COURT ERRED IN FAILING TO FIND, BY THE MANIFEST WEIGHT OF THE EVIDENCE, THAT PLAINTIFF/APPELLANT SUSTAINED COMPENSATORY DAMAGES OF $86,673.86, PLUS INTEREST AND COSTS.
 Assignment of Error No. 7 THE LOWER COURT ERRED IN FAILING TO FIND, AS A MATTER OF LAW, THAT PLAINTIFF/APPELLANT WAS ENTITLED TO AN AWARD OF PUNITIVE DAMAGES AS AND FOR ATTORNEYS' FEES, COSTS AND EXPENSES IN THE AMOUNT OF $34,949.60 BECAUSE OF DEFENDANT'S/APPELLEE'S BREACH OF ITS FIDUCIARY DUTIES AND/OR FRAUD.
 Assignment of Error No. 8 THE LOWER COURT ERRED IN FAILING TO FIND, BY THE MANIFEST WEIGHT OF THE EVIDENCE, THAT PLAINTIFF/APPELLANT WAS ENTITLED TO AN AWARD OF PUNITIVE DAMAGES AS AND FOR ATTORNEYS' FEES, COSTS AND EXPENSES IN THE AMOUNT OF $34,949.60 BECAUSE OF DEFENDANT'S/APPELLEE'S BREACH OF ITS FIDUCIARY DUTIES AND/OR FRAUD.
In his, fifth, sixth, seventh, and eighth assignments of error, Culbertson asserts that it was error for the trial court to find that he was not entitled to any damages. Our disposition of Culbertson's first, second, third, and fourth assignments of error renders his fifth, sixth, seventh, and eighth assignments of error moot, and they are overruled.
 III.
Having overruled Culbertson's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
SLABY, P.J., WHITMORE, J., CONCUR.